Case number 3-19-0181, Jeffrey Guzlas, appellee by James Murphy v. Frank and Don DeSandre, appellants by Gary McGuane. Mr. McGuane. Thank you. My name is Gary McGuane. I'm the attorney for the defendant appellants in this case, Don and Frank DeSandre. Briefly, this case has come up on the review of a judgment by the trial court, finding that the easement at issue in this case had not been terminated. That's the sole real issue before the court. There's no dispute that the easement exists. There's no dispute where it's located. There's no dispute the length or size of it. The only question is, did the easement at some point terminate? The trial court found no, but we're asking this court to reverse and find that it was terminated. The burden of proof, I don't believe, is not an issue in this case as well. Well, let me just ask you one other thing, and he went beyond that, didn't he? He said it's permanent. Yes. Yes, he did. That is also clearly an issue from our point of view. The burden of proof is not in dispute. The plaintiff met his prima facie case burden. My clients must show determination by clerk against the evidence. That's not in dispute. On review, this is a matter of concrete instructions, so we're asking you to just review it. The only evidence regarding the nature... Answer me this. You say it's not in dispute, but how did the easement terminate? The easement terminated by the building of Tahoe Road is our position. It provided alternate access to the property, and the provision of the easement provided that the easement terminated when there was an alternate means of ingress and egress. We know in this country, not just Illinois, know where you can't have several landlocked land, right? Yes. So where's the access off of Tahoe Road? The access is at the end of Tahoe Road or bus directly onto the plaintiff's property. Didn't the city put a storm sewer? I mean, isn't there a storm sewer that comes out right there at the end of Tahoe Road where you can think naturally one would build a culvert and stuff onto the property? A culvert would be required, Judge, yes, but a culvert was also required on the easement as well. Mr. Cruz's... Charles just wanted to know. But I'm just wondering how you build that. How you put a culvert in there when you've got a storm sewer that goes right there. Judge, the entire culvert, the storm sewer goes directly onto Tahoe Road. They were able to build the whole road over it. A culvert just requires... Yeah, but the opening of the storm sewer, how it terminates there. It looks to me like that storm sewer terminates there. And I believe probably on an easement on your opponent's property from what I can gather. There's no evidence that the drainage ditches, which is what it is, terminates there, Judge. I don't know what to make of that. I'm just saying the photos look like it's the opening. It looks like where the outflow is. There was a photo I don't know if there's any evidence that showed the culvert for Tahoe Road on the other side. The culvert has slots in it to allow drainage into a sewer under Tahoe Road. So it's not like there's a retention pond there either. It's a very narrow drainage ditch, Judge. And there's no evidence to indicate that it terminates there. Nor was that raised by the plaintiff, and I believe he would have had that been the case. Plus, again, if you look at the pictures that are offering evidence, there's trees growing all over the place there. That simply wouldn't be the case if it was constantly underwater. As to the language in the easement... Yes, sir. How much distance is it from Tahoe Road to that house? The lot is 1,100 feet long. Tahoe Road is at the north end. The house will be planted at the south end. It's a lot of feet. It's a lot of feet, Judge, but that's not the issue in our opinion. Our opinion is that the easement is explicit. As soon as there's alternate access to the property, the easement terminates. It's a very long property indeed, but if you look at the pictures 17, 18, and 19, you'll see that all the homes to the east of the property are on similarly sized lots. The owner of that land took a long 1,100 foot or more piece of property. He subdivided it and put in additional homes. If Mr. Gouzis had taken advantage of Tahoe Road, that would have opened up the entire property for development. He's not required to do that, but there's no indication that the parties intended that the easement be at the south end of the property. If they had wanted that, they could have put it in the deed. The only thing they could have put in, we want a specific road by a specific builder with a specific surface. It has to be within so many feet of the house. They could have included all that. They didn't. All they put in there was that it has to provide alternate ingress and egress to the property. What about the guardrail? I'm sorry, go ahead. The guardrail is preserved by the City of Lafayette Court. It would have to be removed. And part of saying the ingress and egress, are they going to allow it? Well, the evidence was that Mr. Gouzis had inquired about that fact and was told that he could, that they would allow access, but he had to submit engineering plans. Just as he would have had and certainly did present plans for access to 151st Street, the easement goes through my client's property to 151st Street. He's admitted that he not only paved the road, he built a cover over a drainage ditch in front of 151st Street. He did the same kinds of improvements to the easement that he would have had to make to his own property to use the alternate access. And again... And I realize Latches isn't pled, but your client says they're going to watch him do it. My client said no notices were in the easement until shortly before this case was filed. Their deed is included as an exhibit of complaint and there's no mention of the easement. Probably because whoever originally purchased the property thought Tahoe Road ended the easement as well. But there's no mention, they had no notice. You're correct that Latches is not an issue and this case was never raised, but there wouldn't have been anyway because they didn't have notice until shortly before they blocked access to the easement. There's an action against the Tahoe Company because no one brought to their attention the easement or the alleged easement or whether or not it terminated or not. And again, I would suggest that anyone who looked at this said, while Tahoe Road provides alternate access, the easement should be terminated. When you said that he had invested some money into the south end and it was about $11,000, is there an estimate for what it would cost off of Tahoe Road? Because I think you get into an issue of whether it's reasonable to require that. And so I don't know if you knew if there was a great cost difference or... Two things, Judge. One is, Mr. Gouzis, the only evidence was Mr. Gouzis' testimony that he inquired into it. It was thousands of dollars. But more importantly, reasonableness of the cost is not an issue here. If this were an easement by... And that's one of my central arguments. If the parties wanted the kind of easement the trial court found here, that's an easement by implication. It arises when a landowner divides a property and one of them is landlocked and that implies an easement in the parcel retained by the seller because it's necessary to access the property. In those cases, the courts have held that there is a requirement that the access to the other... to the alternative ingressing use must be reasonable for the plaintiff, the dominant state. That's not... we argue that's not the case here. Well, but wait a minute. On the reasonableness question, if there's no reasonable access to the property, then you have an easement by necessity, don't you? If the easement arises only where the parties haven't created an express easement. Here, the parties agree to the express easement, so the easement by implication cannot arise as a matter of law. They did not ignore the landlocked nature of the property. They came to a conclusion, they came to an agreement in the deed that they were not... they did not put in a provision regarding reasonableness. Again, had they wanted that, you would just strike out the entire easement provision. That's what would have happened. If there was no easement provision in here, the easement by implication would have arisen for necessity. It would have been roughly the same area, and it would have had the requirement that any actual future access to an alternate means of ingress and egress must be, quote, reasonable. That's what the case law says. The attorneys have... this document was prepared by an attorney. It says on its face, prepared by... I forget the names of the attorneys. It says prepared by attorneys, the deed was sent to the attorneys, the attorneys moved the law. If that's what the parties wanted, that easement doesn't belong in the deed. A case that we have cited regarding surpluses is Ramsey-Herndon v. Whiteside, and it's ignored by the appellee, and the trial court may have no discussion, but you cannot interpret a contract in a way that excises portions of that contract. What you also can't do is landlock the land, and parties can't do it by agreement. You can't sell real estate in this country, and not only the parties can't do it, but the courts can't do it. I agree with you. That's not... his property is not landlocked. He may have to pay to improve his property, but there's not a case in Illinois, and I know there's not a case in Illinois that says alternate access means, as the trial court found here, access without cost to the dominant estate. How about reasonable cost? There's a reasonable standard in there, and it's got to be a reasonable cost. Again, Your Honor, I think the parties could, if they had not addressed that, that would be a rise by Banner's law. In this case, the parties addressed it and left out reasonable. It cannot be simply an error of omission. But they didn't identify Tahoe Street as a road, that this is that road, and the question is, is there an opportunity for the construction of a road on the other side of the property or to the back? You know, I think it's G. It shows four points of division. It said that it was all subdivided where Tahoe Road goes in. Then you have the two properties here. On the other side of that, could there be a road there that could be built or something? I mean, I know it was raised that there was no indication, there was nothing in writing that this was the street that was, where it was built was going to end up. No, Your Honor, no. In fact, Plaintiffs 17, 18, and 19 are the aerial photographs. At the time this deed was executed, there was no development on any side of the dominant estate except for the defendant's property. So we don't know what, we don't want, we don't know if that word does in error, but whatever they were referring to, we don't know where the road was intended to be. They didn't bother to put it in the deed because it wasn't important to them. The only thing important about the road, they didn't say the road has to be near the house. They didn't say south, east, north, west. They did say it has to provide alternate access, and we believe Tahoe Road does. Again, the alternate access that's provided doesn't have to be without cost to the dominant estate. But I think because the road is not identified either by legal description, some kind of description, or by name, then that's where you get into whether or not this road provides reasonable ingress or egress. I think you're right if it had been absolutely defined that once this road was built, this was it. But here, don't you have to, I mean, doesn't the case law pretty much tell you that we have to look at whether or not that's reasonable? If this was an easement by implication, based on necessity, that would be the case. I understand Justice Smith's point that the parties can't landlock it anyway. But our contention is it's not landlocked. He has to do the same thing to access Tahoe Road that he did to access 151st Street. The only difference is it's a little longer, or a lot longer, but it also increases the value of his property because he has all that land and one small driveway and only one access point. If he accesses Tahoe Road, he can widen it, his driveway, he has another means of access to the property, he can build houses along that property just as it was built immediately to his east. I'm not saying that's what the parties intended, but I'm saying it demonstrates that their intent wasn't that it had to be a road built directly next to the house, which is what they're implying. Well, again, do you know, was that house even there when that easement was created? The earliest data we have to indicate this house is still there. Judge, I do not know that it was actually there when the easement was created. And it wouldn't change my argument, although it would help, because he could have built it on the north end, thank you, Judge. That is correct. That's not in evidence. That's just another indicator that the parties didn't care about a specific road. I don't know if the dog was a Springer's error, or they at the time had a road in mind that would provide access. The only thing about this road that they cared about was that it provided the access. So I don't think there's any way to fit into the word of the dog all the things that the trial court and the plaintiff have put into it, that it has to be in a particular location of a specific road. If the road is built on the other side of the property, the east side, it's a 101-foot wide lot. If it was built 50 feet to the north, 100 feet to the north, 200 feet to the north, if they cared about that, if they were represented by counsel, they would have and could have improved it in the deed. If they drafted this deed, they have to give effect to all of it. If we do an easement modification, you're striking out the entire easement provision in my opinion. Two minutes, please. And I think that would be improper. I think, again, Mr. Groves has improved the easement rather than his own property at a time when he knew that he could access the whole road. It shouldn't be viewed as just the cost of improving the property. He did the culvert. He did the paving of the driveway. I think this lot is 200 feet long, the two together. Let me just ask you, that brings up a question, something you mentioned earlier and mentioned again. You said that your client didn't have notice. This easement wasn't recorded? That deed was recorded. The deed to their property was not recorded. I mean, their deed to their property was recorded. Their deed does not reference when they bought this house. The deed did not reference any easement in the town of Memphis State. That's why they didn't have notice. They bought a title policy. They would not have bought the title policy. They would not have bought the property if they had known there was this, what the court has gone on as essentially a permanent easement. But then how long did they live there before they bought? Is that easement being used? How many years is that? The easement? How long did the clients live there? I'm not sure that that's in evidence, Judge. I know that they've locked the easement, I think, the first time in 2017, and I believe they had been told by Mr. Gooseless in correspondence a year or two before that. I'm not certain of the dates, and I don't have copies of the correspondence. They're not a record. I believe they had a title insurance that told them there was an easement there. Well, again, that's not a record, but the title insurance did not. There's an action, I believe. I'm not involved in it. I believe the title company did not have a season as well. Again, that's not a record. I don't understand the decision. All right. Anything further? No. Go ahead. Thank you, Mr. McGuane. Mr. Murphy. Justice Schmidt, Justice O'Brien, Justice Whitten, counsel. One of the things, and I think Mr. McGuane made this clear, is this is not an easement by necessity case. What he also said, though, was that we don't really know where the road was supposed to be. He's effectively admitted that there is ambiguity within it. Once then his burden, their burden, to prove by clear and convincing evidence, the title was the road, could have been the road. Judge Anderson looked at this and said the road, using the term the, means a particular road. Mr. McGuane would have you read the out of the deed. He would have you replace it with a or any to have it toppled. Because once you look at a specific road, then Judge Anderson looked at what existed in 1965 when the deed was entered into. There was an undeveloped property next to it. Judge Anderson found that it was unlikely that the road would have been meant to have, meant a road that came into existence 30 years later. And also that was 900 feet basically behind where the house was and with a septic field in between. Was the house there or were they in the septic? I'm trying to remember if I know this in the record or not because what it was is the house, I think it was shown that the house was at least built by the brother that was the first owner of the surveyed estate. So there, whether it actually came afterwards or before, but it shows some intent, but I'd say the record is not entirely clear on that. With regard to, but I think, you know, more attenuated, you could take the jump that the people that were closest in time that built the house had an understanding of it. They built the house where they thought the road was going to be and would not have believed that it was going to be someplace where you're going to have to go through it to go over a septic field. The other thing gets to the question of ingress and egress. As you pointed out, there is a culvert that is centered under Tahoe Road that discharges basically in the center of Tahoe Road. You can't go straight over there without significant engineering. There also is a permanent barrier there in the form of a retaining barrier, metal into concrete. That's hardly permanent. They've got bulldozers. They do, but you also have to get, but as it is now, you can't do it on your own. You can't, you know, just go there. Mr. Guzles can't do that without getting further permission, at least from Lockport. Who's got the burden here to show that there's reasonable access off of that road, off of Tahoe Road? Well, the burden, first of all, I think there's probably an interpretation. And the interpretation would be when you have ingress and egress, what do the parties mean by that? And I would say that it's reasonable ingress and egress. It's then defendant's burden, as they survey the state, to show by clear and convincing evidence that it's reasonable access, that that equates to ingress and egress. So, and then, on top of that, you then have to determine that Judge Anderson's determination that they did not prove something by clear and convincing evidence was against the manifest way to the evidence. Well, what about Judge Anderson's determination that this was a permanent easement? How do you square that with the language of the easement? I think what, and I'm not sure that that's exactly squared, because as I looked at it, there would be a question of if you have the road effectively where the easement is, but it might have different dimensions, a little bit different contours. But the other thing is, what I would back up in first is saying, was Judge Anderson wrong in determining that the road means a specific road? If it means a specific road, it was then defendant's burden to show what road that meant. Whether it can be the road in the same place as the easement, I think that's sort of the question maybe you're getting to, is you could put a road in, and it might not have the contours. In my recollection is this mud was 20 feet wide. It could be the road was 16 feet wide, as long as it provided ingress and egress. And you might end up losing 4 feet of what the easement is. It's also, and I understand this, it's difficult to sort of square this deed when we have one sentence and has very little else. But it's defendant's burden is the survey of donor to prove that the easement terminated by clear and convincing evidence. So you really have to get to a question of does the road, can the road mean any road or a road? Are you then in agreement? Well, I think, or wouldn't a reasonable interpretation mean any road that would provide reasonable ingress and egress to that property? I don't think so, because they didn't use that term. And the reason they may well have not used that term is they recognize the size of the property, and they have something specifically in mind. Well, when you said that's not in the record, that they had something in mind. Well, they have specifically, what they have specifically in mind, what you get there from the record is because they said the road. No, you still, it just seems to me that you can't say we're going to put more weight on particular words so we then eliminate a word that's been chosen by the parties. That's reformation of the contract. Well, this contract was not a master work. It reminds me sometimes of trust that were written in the 60s compared to trust that would be written now. Two pages versus multiple pages. Many multiple. So if the road would, let's assume for the sake of argument that the road would provide reasonable, there's a road that provides reasonable access and ingress and egress. Then on this contract, you'd say you're trying to, that's not the road. That's not the road. You're saying that some other road was 100 yards away. Yes. I mean, that's what, they have two hurdles. One is to show that it's the road. The other is to show that it actually provides ingress and egress. And the question on the ingress and egress is, I think Mr. McLean says, well, it doesn't have to be reasonable ingress and egress. You'd only have to have that if it was an easement by necessity. Why, if, again, if lawyers were drafting this and they know of easements by necessity, would they refer to the road or would they have any easement provided? Because there would be an easement by necessity. They wouldn't have had to refer to the road. They wouldn't have had to refer to ingress and egress because that's what's required in easement by necessity. So it's got to mean something. Again, following Mr. McLean's argument, if you're using reasonable competent attorneys, that they must have meant something else. Well, who knows? Who knows? I mean, if you look at this, you wonder why any competent lawyer would draft an easement like that, okay? I would draft it differently. But usually I don't get cases that I've drafted. So if you have no other questions, Your Honor. Thank you. Thank you, Mr. Murphy. Mr. McLean, summary of the bible. The counsel's attempt to resurrect the trial court's finding that the easement, the road, quotes, probably refers to the driveway, the existing easement. That simply cannot be. The easement contains a termination provision. If the road refers to the easement itself, then when Mr. Guzis approved the easement, he terminated his own easement. That couldn't be what it was meant. Well, if he did, he would have just needed in the property that the easement runs across, right? Yes. Well, maybe not because they wanted to use it for their own driveway. They share the driveway. But something else would have been done, other than what was done in this case. So the easement and the road are not the same. As to the permit easement, again, if the trial court is correct, then the last sentence of the easement termination provision is excess. You have to strike that off in the contract. That's reformation. Whether or not the altered access has to be reasonable. I'm cautious about that because the case law on the easement's magnification say that reasonable means a relatively similar cost. It's somewhat more expensive for the downer estate. They don't have to use it. And my position is that's what they were trying to avoid here. They didn't want their brother to be able to decide, well, it costs a little too much, so I'm going to keep using your property. But there's no evidence one way or another, whether that, to improve that so we could have ingress-negress off the end of Tower Road, whether it would have cost $12,000 or $120,000. No, it doesn't. I would agree that if, say, the property abutted on a lake or river and you had to build a bridge, that clearly would not be altered access. But if you have to spend, I don't know, $5,000, $10,000, $20,000, whatever the amount, to improve a 1,100-acre lot or 1,100-foot lot where other homes could easily be built, increasing the value of that property, it might well be worth the investment. The point is that language is not in the deed.  And this is not an equitable easement. This is an easement on contract. And our position is you can't read the word reasonable into that contract. They could have provided that. They could have said this specific road. They could have said a road near the house. They could have said a road, access to which is expensive, which is reasonable to the dominant state. They could have written all of those things. They did not. We have no one here to testify. No evidence of their actual intent. We're relying on the document. And the law in the state of Illinois is where the document is not ambiguous, you can't look outside the contract. We don't need it. If you take your view, would you agree with me that a reasonable man wouldn't spend an unreasonable amount of money to improve, to make that access? I would agree. Okay. Yes. So if we take your view on there's no reasonableness aspect, then if it, the cost wouldn't, whether it's reasonable or irrelevant, then in effect you've landlocked the property. And you can't believe that anybody intended that at some point that property would be landlocked because some road would be built that somebody could get ingress and egress at some unreasonable cost. I understand just, but I don't think there's any evidence. Again, the evidence of the improvements that are needed are virtually identical to the improvements he already did on the easement. Well, I think a driveway and a culvert. I've been through this file pretty good, and I didn't see any evidence about what the cost of. No, Judge, there's not. Other than Mr. Dugan's testimony that's in the thousands of dollars. But that's, again, that wasn't my point. My point is he did the same engineering plans, culvert, paving, on a shorter stretch over the easement. He already did that knowing that Tahoe Road was there. Unless there is some prohibitive, evidence of some prohibitive obstacle, and I don't believe there is any record, it might cost him more to do it, more asphalt, a bigger culvert. But there's no reason to believe that that's unreasonable. Even if you imply the term reasonable in there, whether a person would do that or not, the brothers made a contract. It's an express contract, not one implied by law, and it is our position that you cannot read terms into that. And that maybe was too expensive to build. We have no idea if it was too expensive to the brother, but he would have bought the property otherwise. Your Honor, I want to mention to yourself, he could have built his home anywhere on the property. He built it there because it was closer to the existing easement, not because of any planned road. I think that's clear. But according to counsel, that's not in the record. The house was built by the purchaser, by the dominant estate purchaser. It most likely postdated the easement that was created in this case. One minute, please. Anything further? Thank you, Mr. McWane. Thank you, Mr. Murphy. This matter will be taken under advisement. A written disposition will be issued. We'll be in a brief recess for a panel change before the next case.